UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ALEX SALTOS,

                              Plaintiff,                    **REPORT AND**
    -against-                                       **RECOMMENDATION**

GGI CONSTRUCTION CORP. and              21-CV-6459 (FB) (SIL)
IVAN CAMPOS,

                              Defendants.
----------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

       Presently before the Court in this wage and hour litigation, on referral from the Honorable Frederic Block, is Plaintiff Alex Saltos's ("Plaintiff" or "Saltos") motion for default judgment.  *See* Plaintiff's Notice of Motion ("Pl. Mot."), DE [10]; Plaintiff's Memorandum of Law in Support of His Motion for Default Judgment ("Pl. Mem."), DE [10-2].  By way of Complaint dated November 19, 2021, Saltos commenced this action against Defendants GGI Construction Corporation ("GGI Construction") and Ivan Campos ("Campos" and together "Defendants") alleging violations of the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201 *et seq.*, New York Labor Law ("NYLL") §§ 190 *et seq.*, and New York Codes, Rules, and Regulations ("NYCRR") Title 12 §§ 142 *et seq.  See* Complaint ("Compl."), Docket Entry ("DE") [1].  Defendants failed to answer or otherwise respond, and on January 18, 2022, the Clerk of the Court entered a Certificate of Default against them.  DE [9].  On January 28, 2022, Saltos filed the instant motion for default judgment, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 55(b)(2), which Judge Block referred to this Court on

January 31, 2022 for report and recommendation to determine liability and damages. *See* January 31, 2022 Electronic Order.  For the reasons set forth below, the Court respectfully recommends that Plaintiff's motion be granted and that he be awarded $4,644 in compensatory damages, $4,644 in liquidated damages, $10,000 in statutory damages, $424.35 in prejudgment interest, accruing at a daily rate of $1.15 until judgment is entered, and post-judgment interest calculated from the date the Clerk of Court enters judgment until payment, and that the total judgment increase by 15% if any amount remains unpaid after ninety days.

## I.  BACKGROUND

### A.  Relevant Facts

All relevant facts are taken from the Complaint and the instant motion papers and assumed true for purposes of resolving this motion.  *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004).

Saltos, a New York resident, was employed by Defendants as a manual construction laborer from about May 1, 2021 until September 27, 2021.  Compl. ¶¶ 5, 19-20; *see also* Declaration in Support by Alex Saltos ("Saltos Decl.") ¶¶ 9.  His job duties included framing, roofing, siding and painting houses.  Saltos Decl. ¶ 10.

GGI Construction is a New York limited liability company, with its principal place of business at 12 Old Squiretown Road, Hampton Bays, New York 11946, and it performs home improvement services on Long Island.  *Id.* ¶¶ 4, 6.  Campos is the Chief Executive Officer and President of GGI Construction and ran the day-to-day operations of the company at all relevant times including hiring, management, supervision and setting hours and pay of employees.  Compl. ¶¶ 10-13.  During

Plaintiff's employment, Defendants had two or more employees and regularly handled goods and materials that originated outside of New York, such as roof shingles, wood, siding, paint and other construction materials and equipment. Saltos Decl. ¶¶ 11. Saltos alleges that the gross annual sales or business done by GGI Construction in 2021 exceeded $500,000. Compl. ¶ 47. As a result, Plaintiff claims GGI Construction and Campos are covered employers within the meaning of the FLSA and the NYLL, and, at all relevant times, jointly employed Plaintiff. *Id.* ¶ 17.

On or about May 1, 2021, Campos hired Saltos. Saltos Decl. ¶¶ 9, 21. During Plaintiff's 21 weeks of employment at GGI Construction, Campos determined the number of hours Saltos worked each week, the construction sites he attended, the job duties he performed, his rate and manner of pay, the employees' supervision and the day-to-day operations of the company. *Id.* ¶¶ 22-29. Saltos typically worked Monday through Saturday from about 8:00 a.m. until 6:30 p.m. with a one-hour lunch break each shift, which totaled 57 hours per week for 16 weeks. *Id.* ¶ 13. He also worked one Sunday per month from about 8:00 a.m. until 2:00 p.m. with no break, and which totaled 63 hours per week for 5 weeks. *Id.* According to Saltos, Campos wrote down the hours that Plaintiff worked each day, and Defendants paid him in cash on a weekly basis at $24 per hour for "straight-time," meaning that they did not pay him overtime compensation for hours worked over 40 per week. *Id.* ¶¶ 12, 15-18. Saltos also contends that Defendants did not provide him with a notice of his hourly rate or pay day upon hiring or thereafter, and Plaintiff never received complete and accurate paystubs, nor did Campos provide him with written time records at any point. *Id.* ¶¶

3

12, 19-20. Saltos alleges that Defendants' wage and hour violations were knowing and in reckless disregard of his rights. Compl. ¶ 42.

### B. Procedural History

Based on the above, Plaintiff commenced this action by Complaint on November 19, 2021 alleging violations of the FLSA §§ 201 *et seq.*, NYLL §§ 190 *et seq.*, and 12 NYCRR §§ 142 *et seq.* for Defendants' failure to pay overtime and provide wage notices and statements, seeking compensatory damages, liquidated damages, statutory damages, and pre- and post-judgment interest. *See* Compl.; Pl. Mem. Exhibit ("Ex.") A; Declaration in Support by Keith E. Williams, Esq. ("Williams Decl.") ¶ 17.[1] On November 23, 2021, Plaintiff served a copy of the Summons and Complaint on GGI Construction by delivering two true copies thereof to the New York Secretary of State pursuant to New York Business Corporation Law § 306. DE [4]; Pl. Mem. Ex. B. On November 27, 2021, a copy of the Summons and Complaint was personally served upon Campos. DE [5]; Pl. Mem. Ex. C. Defendants failed to answer or otherwise respond to the Complaint within the time allotted under the Federal Rules of Civil Procedure, which was December 20, 2021, and the following day Plaintiff mailed courtesy copies of the Summons and Complaint via USPS First Class Mail to each of the Defendant's known addresses. Pl. Mem. Ex. D. On January 12, 2022, Plaintiff requested a Certificate of Default from the Clerk of the Court for both Defendants. DE [7]; Pl. Mem. Ex. E. On January 18, 2022, the Clerk entered Defendants' defaults pursuant to Fed. R. Civ. P. 55(a). DE [8]; Pl. Mem. Ex. F. Saltos

---

[1] Plaintiff also requested attorneys' fees and costs in his Complaint, but is not seeking an award as to these expenses for purposes of this motion. *See* Williams Decl. ¶ 26.

4

served the entry of default upon GGI Construction and Campos on January 19, 2022 and filed proof of service with the Court. *See* DE [9]. To date, Defendants have failed to appear, answer or otherwise defend this action.

On January 28, 2022, Plaintiff filed the instant motion for default judgment against Defendants. *See* Pl. Mot. In support of his motion, Saltos submits his declaration, his attorney's declaration, and an estimated calculation of damages. *See* Saltos Decl.; Williams Decl.; Pl Mem. Ex. H ("Estimated Calculation of Damages"). Defendants have failed to respond. On January 31, 2022, Judge Block referred the motion to this Court to determine liability and damages. *See* January 31, 2022 Electronic Order. For the reasons set forth below, the Court recommends granting Plaintiff's motion in its entirety.

## II.   LEGAL STANDARD

Motions for default judgment are governed by Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), which provides for a two-step process. *See* Fed. R. Civ. P. 55; *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011). Initially, the moving party must obtain a certificate of default from the Clerk of the Court. *See* Fed. R. Civ. P. 55(a). Once the certificate of default is issued, the moving party may apply for entry of a default judgment. *See id.* at 55(b). Where a default occurs, the well-pleaded factual allegations set forth in a complaint relating to liability are deemed true. *See Vermont Teddy Bear Co.*, 373 F.3d at 246; *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages— is admitted if a responsive pleading is required and the allegation is not denied.").

5

The entry of a default judgment, however, is "entrusted to the sound judicial discretion of the court," and a party is not entitled to a default judgment as a matter of right. *Allstate Ins. Co. v. Howell*, No. 09-cv-4660, 2013 WL 5447152, at *1 (E.D.N.Y. Sep. 30, 2013) (citation omitted). In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party. *See Guanglei Jiao v. Shang Shang Qian Inc.*, No. 18CIV5624ARRVMS, 2020 WL 6370148, at *10-11 (E.D.N.Y. Aug. 11, 2020), *report and recommendation adopted*, No. 18CV5624ARRVMS, 2020 WL 5105063 (E.D.N.Y. Aug. 31, 2020) (internal quotations and citations omitted).

A plaintiff seeking a default judgment must demonstrate that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). In determining whether to grant a motion for default judgment, the court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." *Ferrera v. Tire Shop Ctr.*, No. 14-cv-4657, 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015), *report and recommendation adopted*, No. 14-cv-4657, 2015 WL 3604078 (E.D.N.Y. Jun. 5, 2015) (internal quotation and citation omitted). Accordingly, prior to entering a default judgment, the court must determine whether the plaintiff's allegations establish the defendant's liability "as a matter of law." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015).

Once liability has been established, "[t]he court must also determine the amount of damages, actual or statutory, that may be assessed." *Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 111 (E.D.N.Y. 2010).

### III. DISCUSSION

#### A. Liability

##### 1. Defendants' Liability for Overtime Violations

To succeed on an FLSA overtime claim, a plaintiff must establish that: "'(1) the Defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) the Plaintiff is an 'employee' within the meaning of the FLSA; [ ] (3) the employment relationship is not exempted from the FLSA;'" and (4) he worked in excess of forty hours per week without receiving overtime compensation. *Rodriguez v. Ridge Pizza Inc.*, 16-CV-0254 (DRH)(AKT), 2018 WL 1335358, at *5 (E.D.N.Y. Mar. 15, 2018) (quoting *Garcia v. Badyna*, 13-CV-4021 (RRM)(CLP), 2014 WL 4728287, at *5 (E.D.N.Y. Sep. 23, 2014)); *see Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).

Initially, a plaintiff must demonstrate that the defendant is an employer engaged in interstate commerce to be afforded protection under the FLSA. *See* 29 U.S.C. § 207; *D'Arpa v. Runway Towing Corp.*, No. 12-cv-1120, 2013 WL 3010810, at *13 (E.D.N.Y. Jun. 18, 2013). An "enterprise engaged in interstate commerce" is an entity whose annual gross volume of sales or business done is not less than $500,000 and has employees engaged in interstate commerce. *Valdez v. H & S Rest. Operations, Inc.*, No. 14-cv-4701, 2016 WL 3079028, at *2 (E.D.N.Y. Mar. 29, 2016), *report and recommendation adopted*, 2016 WL 3087053 (E.D.N.Y. May 27, 2016)

7

(citation omitted). "Employees are 'engaged in commerce' within the meaning of the [FLSA] when they are performing work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among the several States or between any State and any place outside thereof." 29 C.F.R. § 779.103.

Next, the FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee. . . ." 29 U.S.C. § 203(d). To determine whether an entity or person is an employer under the statute, the Second Circuit utilizes the economic realities test, which focuses on "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-05 (2d Cir. 2013) (internal quotation and citation omitted). The analysis depends on whether a defendant had "operational control" over the employee. *Id.* at 110. This same test applies to individual and corporate defendants. *See Kalloo v. Unlimited Mech. Co. of NY, Inc.*, 977 F. Supp. 2d 187, 201 (E.D.N.Y. 2013) (applying the economic realities test to individual defendant); *Gillian v. Starjam Rest. Corp.*, 10-cv-6056, 2011 WL 4639842, at *4 (S.D.N.Y. Oct. 4, 2011) (same); *Gayle v. Harry's Nurses Registry, Inc.*, 07-cv-4672, 2009 WL 605790, at *9 (E.D.N.Y. Mar. 9, 2009) (same). Certain exemptions to the employment relationship, however, exclude an employee from FLSA overtime protections. *See* 29 U.S.C. § 213.

Finally, the FLSA requires employers to provide employees with an overtime premium for all hours worked exceeding 40 hours per week at one and one-half times his regular rate of pay. *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.112. If the employer fails to produce such evidence, such as by default, the court may determine liability under the FLSA and award damages to the employee, even though the result is only approximate. *Jemine v. Dennis*, 901 F. Supp. 2d 365, 376 (2d Cir. 2012).

Like federal law, New York law requires employers to provide employees with an overtime premium for all hours worked in excess of 40 hours per week at one and one-half times the regular rate of pay. NYLL §§ 650 *et seq.*; 12 NYCRR § 142-2.2. To establish an overtime claim under the NYLL, a plaintiff must establish that: (1) he worked in excess of 40 hours in a given workweek without receiving overtime compensation; (2) he was an "employee" as defined in the statute; and (3) the defendant was an "employer" as defined by the statute. *Rodriguez*, 2018 WL 1335358, at *7 (quoting *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 34 (E.D.N.Y. 2015). "The New York Labor Law 'is the state analogue to the federal FLSA.'" *D'Arpa*, 2013 WL 3010810, at *18 (quoting *Santillan*, 822 F. Supp. 2d at 292). As such, the "standards by which a court determines whether an entity is an employer under the FLSA also govern that determination under the New York labor law." *Wolman v. Catholic Health Sys. of Long Island, Inc.*, No. 10-cv-1326, 2013 WL 1335748, at *2 (E.D.N.Y. Mar. 29, 2013) (internal quotation omitted); *Serrano v. I. Hardware Distributors, Inc.*, No. 14-cv-2488, 2016 WL 1441469, at *2 (S.D.N.Y. Apr. 7, 2016) ("To determine whether an individual is an 'employer' under both statutes,

9

courts in this circuit consider the 'economic reality' of the employer-employee relationship.") (internal citation omitted)).

Applying the standards outline above, Plaintiff has sufficiently established Defendants' liability under the FLSA and NYLL for failure to pay overtime. Initially, Saltos alleges that GGI Construction was an enterprise engaged in commerce or the production of goods for commerce and that it had two or more employees handling construction material, equipment and supplies that originated outside of New York and were sold to customers to renovate their Long Island homes. Compl. ¶¶ 18, 45-56; Saltos Decl. ¶ 11. Plaintiff further claims that GGI Construction's gross annual volume of sales made or business done in 2021 exceeded $500,000. Compl. ¶ 47. Campos was the CEO and director of GGI construction, running the day-to-day operation and control of the company and supervising employees. *Id.* ¶¶ 11-14, 38-40; Saltos Decl. ¶¶ 8, 28-30. These allegations, accepted as true, establish that GGI Construction, owned and operated by Campos, was engaged interstate commerce.

Next, Plaintiff alleges that Defendants employed him as a construction laborer at various job sites throughout Long Island and that they controlled the employment relationship by hiring him to work for their benefit, determining his working conditions and job duties, controlling his rate and method of pay, and scheduling the number of days and hours he worked each week. Compl. ¶ 13-16; Saltos Decl. ¶¶ 21-30. Campos was Saltos's supervisor and ran the day-to-day operations of the company at all relevant times including hiring, management, supervision and setting employees' hours and pay. Compl. ¶¶ 10, 12-15, 31-38; Saltos Decl. ¶¶ 8, 21-30. These

10

allegations demonstrate that Defendants had operational control over Saltos's employment, and as a result, are employers under the FLSA and NYLL, and that Campos can be held individually liable for the wage and hour violations alleged by Plaintiff. Moreover, Saltos's job duties included performing construction on Defendants' job sites, such as framing, roofing, siding and painting houses, Saltos Decl. ¶ 10, and, therefore, the employment relationship is not exempted from the definition of "employee" under the statute. *See* 29 U.S.C. § 213.

Further, Plaintiff alleges and attests that throughout his employment, he consistently worked in excess of 40 hours per week, at 57 hours for 16 weeks and 63 hours for 5 weeks, yet Defendants paid him "straight-time" for all his hours without the additional "half-time" premium. Compl. ¶¶ 22-28; Saltos Decl. ¶¶ 13-18. This makes Plaintiff entitled to the "half-time" rate for all hours worked over 40 each week. *See* 29 C.F.R. § 778.110. Saltos provides sufficient support for the days and hours worked each week during his employment and the amount of compensation paid to him for such work at $24 per hour in his Estimated Calculation of Damages. Accordingly, because Plaintiff has met his burden, the Court recommends Defendants be found liable under the FLSA and NYLL for failure to pay overtime wages.

        2.     *Defendants' Liability for Wage Notice and Statement Violations*

Next, the New York Wage Theft Prevention Act ("WTPA") requires employers to provide a wage notice to an employee at the time of hiring. NYLL § 195(1)(a). The WTPA also mandates that employers provide employees a wage statement or paystub with every payment of wages. NYLL § 195(3). In addition, New York law requires

11

employers to make, keep and preserve records of employee wages, hours and employment conditions. *See* 12 NYCRR § 142-2.6.

Here, Plaintiff has sufficiently established Defendants' liability for failure to provide wage notices and statements under New York law. Saltos alleges in his Complaint and attests that he never received a wage notice from Defendants at the time he was hired or at any other time, and he never received wage statements with his weekly earnings. Compl. ¶¶ 29-30; Saltos Decl. ¶¶ 12, 19-20. Accordingly, the Court recommends a determination that Defendants are also liable for their wage notice and statement violations under New York law.

### B. Damages

Having determined Defendant's liability, the Court must now assess the amount of damages, whether actual or statutory, that may be awarded. *Lyons P'ship, L.P.*, 702 F. Supp. 2d at 111. Federal Rule of Civil Procedure 55(b)(2) provides, in pertinent part, that "the court may conduct hearings . . . it needs . . . [to] determine the amount of damages" in the event a defendant defaults. Fed. R. Civ. P. 55(b)(2). "By its terms, 55(b)(2) leaves the decision of whether a hearing is necessary to the discretion of the district court." *Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). District courts within the Second Circuit have recognized that an inquest hearing is not necessary where, as here, the plaintiff provides sufficient support allowing the court to establish damages to a reasonable certainty. *Avelar v. Ed Quiros, Inc.*, 13-CV-7017 (ADS)(AYS), 2015 WL 1247102, at \*7-8 (E.D.N.Y. Mar. 18, 2015). Detailed affidavits and other documentary evidence can suffice in lieu of

12

an evidentiary hearing. *Gunawan*, 897 F. Supp. 2d at 83 (citing *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991)).

Here, the Court concludes that an inquest hearing is unnecessary because Plaintiff has established his damages with reasonable certainty. Saltos alleges in his Complaint and attests to details concerning his weekly work schedule, the number of hours worked each day and week, his hourly rate of pay and his job duties. *See* Compl. ¶¶ 20-27; Saltos Decl. ¶¶ 9-18. He also provides an Estimated Calculation of Damages which demonstrates the amount he is owed with reasonable certainty despite Defendants' failure to appear in this case. Accordingly, the Court recommends a determination that an inquest is unnecessary, and that Plaintiff be awarded the damages as calculated below.

*1. Compensatory Damages for Overtime Violations*

The FLSA and NYLL require employers to provide employees with an overtime premium for all hours worked exceeding 40 hours per week at one and one-half times his regular rate of pay. *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.112; NYLL §§ 650 *et seq.*; 12 NYCRR § 142-2.2. If the employer fails to produce such evidence in response to an overtime claim, the court may then award damages to the employee, even though the result is only approximate. *Jemine v. Dennis*, 901 F. Supp. 2d 365, 376 (2d Cir. 2012). Likewise, where the employer has defaulted, the employee's recollection and estimates of hours worked are presumed to be correct, *Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011); *Gunawan*, 897 F. Supp. 2d at 83, and "the employer cannot be heard to complain that the damages lack the exactness

13

and precision of measurement that would be possible had he kept records." *Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381, 398 (E.D.N.Y. 2007) (internal quotation omitted). A plaintiff is only entitled to one recovery for overtime violations alleged under the FLSA and NYLL, however. *See Ni v. Bat-Yam Food Servs. Inc.*, No. 13-cv-7274, 2016 WL 369681, at *1 (S.D.N.Y. Jan. 27, 2016).

Here, Plaintiff alleges that he was employed by Defendants from about May 1, 2021 until September 27, 2021 totaling 21 weeks. He was paid in cash at a flat rate of $24 per hour and worked 57 hours per week for 16 weeks and 63 hours per week for 5 weeks and was not compensated at time and a half for hours over 40 per week. Compl. ¶¶ 22-23, 25-28; Saltos Decl. ¶¶ 12-13, 15-18. Saltos submits an Estimated Calculation of Damages in support of his allegations, which the Court concludes sufficiently demonstrates that Plaintiff is owed $4,644 in unpaid overtime compensation.

### 2. *Liquidated Damages for Overtime Violations*

Next, "an employer may be liable for liquidated damages 'in an additional equal amount' to the amount owed for 'unpaid minimum wages, or . . . unpaid overtime compensation.'" *Begum v. Ariba Discount, Inc.*, 12-CV-6620 (DLC), 2015 WL 223780, at *2 (S.D.N.Y. Jan. 16, 2015) (quoting 29 U.S.C. § 216(b)). FLSA liquidated damages are compensatory in nature and constitute compensation for an employee's pay which result in damages too obscure and difficult to estimate. *Cesario v. BNI Constr., Inc.*, 07-CV-8545 (LLS)(GWG), 2008 WL 5210209, at *5 (S.D.N.Y. Dec. 15, 2008) (internal quotations and alternations omitted). Nonetheless, liquidated

damages under the FLSA may be avoided, in the court's discretion, "if the employer 'shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation' of the FLSA." *Id.* (quoting 29 U.S.C. § 260). The employer bears the difficult burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness. *Id.* (internal citations and quotations omitted).

Under the NYLL, employees may also recover liquidated damages equal to 100% of the total unpaid wages owed, unless "the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." NYLL § 198(1-a). "[L]iquidated damages are presumed unless defendants can show subjective good faith." *Fermin*, 93 F. Supp. 3d at 47 (quoting *Zubair v. EnTech Eng'g, P.C.*, 900 F. Supp. 2d 355, 360 n.3 (S.D.N.Y. 2012)). Plaintiff is not entitled to cumulative liquidated damages under both the FLSA and NYLL for unpaid wages, however. *See, e.g., Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 61 (2d Cir. 2016); *Granados v. Traffic Bar & Rest.*, 13-CV-0500 (TPG)(JCF), 2016 WL 7410725, at *5 (S.D.N.Y. Dec. 21, 2016); *Garcia-Devargas v. Maino,* 15-CV-2285 (GBD)(JLC), 2017 WL 129123, at *9 n.10 (S.D.N.Y. Jan. 13, 2017) (report and recommendation). Instead, an employee may recover "under the statute that provides the greatest relief." *Castillo v. RV Transp., Inc.*, 15-CV-0527 (LGS), 2016 WL 1417848, at *3 (S.D.N.Y. Apr. 11, 2016); *see also Morales v. Mw Bronx, Inc.*, 15-CV-6296 (TPG), 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016) (courts awarding

15

damages under only one statute "apply whichever liquidated damage statute results in the higher award for the plaintiff.").

Here, Plaintiff requests that he be awarded liquidated damages solely under the NYLL, rather than the FLSA, as it results in the greatest relief because he would be able to recover prejudgment interest under the NYLL as discussed below. *See* Pl. Mem. at 16. Saltos alleges that Defendants' violations of the FLSA and the NYLL were knowing and willful, Compl. ¶ 42; Saltos Decl. ¶¶ 31-32, and because Defendants are in default, they fail to demonstrate that their failure to pay Plaintiff overtime compensation was in good faith or that they had reasonable grounds for believing that their omission was not a violation of the FLSA or the NYLL. *See, e.g., Chen v. JP Stand. Constr. Corp.*, 14-CV-1086 (MKB), 2016 WL 2909966 (E.D.N.Y. Mar. 18, 2016), *report and recommendation adopted*, 14CV1086MKBRLM, 2016 WL 2758272, at *5, 12 (E.D.N.Y. May 12, 2016) (concluding that where the employer has defaulted, willfulness has been established if alleged in the complaint and awarding liquidated damages).

Accordingly, the court recommends granting Saltos's request that he be awarded liquidated damages solely under the NYLL, and that he be awarded 100% liquidated damages on his unpaid overtime claim, which is an additional $4,644.

### 3. Statutory Damages for Notice and Statement Violations

The WTPA entitles a plaintiff to recover $50 for each workday that a wage notice violation occurs, not to exceed $5,000. *See* NYLL § 198(1-b); *see also, Zhen Ming Chen v. New Fresco Tortillas Taco LLC*, 15-CV-2158 (RA)(AJP), 2015 WL

5710320, at *8 (S.D.N.Y. Sep. 25, 2015). The WTPA also allows a plaintiff to recover $250 for each workday that a wage statement violation occurred, not to exceed $5,000. *See* NYLL § 198(1-d); *see also Chen*, 2015 WL 5710320, at *7.

Here, Plaintiff has shown he is entitled to recover $50 for each workday that a wage notice violation occurred, and $250 for each workday that a wage statement violation occurred, each of which cannot exceed $5,000 respectively. *See* NYLL § 198(1-b), (1-d). Based on Plaintiff's Estimated Calculation of Damages, the values of each would exceed $5,000 based on the number of days Saltos worked for Defendants. Accordingly, the Court recommends concluding that Plaintiff is entitled to an additional $10,000 for Defendants' failure to provide legally required wage statements and notices.

### 4. *Prejudgment Interest*

Although it is "well settled" that prejudgment interest is not awardable under the FLSA, *Begum v. Ariba Disc., Inc.*, 12-CV-6620, 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015), "the NYLL permits the award of both liquidated damages and pre-judgment interest." *Fermin*, 93 F. Supp. 3d at 38. Under the New York Civil Practice Law and Rules ("CPLR"), "[i]nterest shall be at the rate of nine per centum per annum." CPLR § 5004. Where, as here, unpaid wages are "incurred at various times, interest shall be computed . . . from a single reasonable intermediate date." *Id.* at § 5001(b); *Coulibaly v. Millennium Super Car Wash, Inc.*, 12-CV-04760, 2013 WL 6021668, at *15 (E.D.N.Y. Nov. 13, 2013). District courts in the Second Circuit have found that a single reasonable intermediate date is the median date between the

earliest and latest dates within the statute of limitations period that a plaintiff's wage claim accrued. *See Hernandez v. NJK Contractors, Inc.*, 09-CV-4812 (RER), 2015 WL 1966355, at *51 (E.D.N.Y. May 1, 2015); *Coulibaly*, 2013 WL 6021668, at *15 (using the midpoint of the plaintiff's NYLL overtime claims to calculate prejudgment interest).

Plaintiff requests, and the Court recommends granting, liquidated damages solely under the NYLL so that he may recover prejudgment interest on his compensatory damages as that would yield the greatest recovery. Based on Saltos's allegations and Estimated Calculation of Damages, his NYLL claims period starts on May 1, 2021 and ends on September 27, 2021 making the approximate median date when Plaintiff's NYLL overtime claims accrued July 14, 2021. Accordingly, the Court recommends Saltos be awarded $424.35 in prejudgment interest from the date of this report and recommendation at a rate of $1.15 per day until judgment is entered.[2]

### 5. *Post-Judgment Interest*

To calculate post-judgment interest, any "judgment would be governed by the plain language of 28 U.S.C. § 1961, which applies to 'any money judgment in a civil case recovered in a district court.'" *Khurana*, 2017 WL 1251102, at *17 (citing 28 U.S.C. § 1961). A plaintiff who prevails in a civil case is, therefore, entitled to recover post-judgment interest at the statutorily prescribed federal rate. *See* 28 U.S.C. § 1961(a)-(b).

---

[2] This figure was calculated by taking the number of days between the median date, July 14, 2021, and today's date, July 18, 2022 (369 days) and multiplying it by the daily interest rate of $1.15 ($4,644 (principal compensatory damages) x 0.09 (yearly interest) = $417.96 (yearly interest) / 365 days = $1.15 per day interest).

18

Moreover, pursuant to NYLL § 198, "any judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL § 198(4); NYLL § 663(4); *see also, Elghourab v. Vista JFK, LLC*, No. 17-CV-911 (ARR) (ST), 2019 WL 2431905, *8 (E.D.N.Y. Jun. 11, 2019), *aff'd*, 818 F. App'x 63 (2d Cir. 2020).

The one-year constant maturity Treasury yield for the week beginning July 11, 2022 is 1.58. *See* https://www.federalreserve.gov/releases/h15/. Accordingly, the Court recommends that Plaintiff be awarded post-judgment interest calculated from the date the Clerk of Court enters judgment until the date the judgment is paid. If after ninety days no appeal is pending and Defendants have failed to make a full payment, the Court recommends that the judgment amount be increased by 15%.

## IV.  CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's motion for default judgment be granted, and that Plaintiff be awarded $4,644 in compensatory damages, $4,644 in liquidated damages, $10,000 in statutory damages, and $424.35 in prejudgment interest, for a total of $19,712.35 with prejudgment interest, accruing at a daily rate of $1.15 until judgment is entered, and post-judgment interest calculated from the date the Clerk of Court enters judgment until

payment, which shall increase by 15% if any amount remains unpaid after ninety days.

V. **OBJECTIONS**

A copy of this Report and Recommendation is being served on Plaintiff by electronic filing on the date below. Plaintiff is directed to serve a copy of it on Defendants and promptly file proof of serve by ECF. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. 22 Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
July 18, 2022

/s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge